UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | 09 CR 383-3 |
| v. | ) | |
| | ) | Judge Ruben Castillo |
| JESUS VICENTE ZAMBADA-NIEBLA | ) | |
| | ) | |

**DEFENDANT JESUS VICENTE ZAMBADA-NIEBLA'S MOTION
TO REQUIRE THE BUREAU OF PRISONS
TO ALLOW HIM OUTDOOR RECREATION.**

Defendant, Jesus Vicente Zambada-Niebla ("Vicente"), by his attorneys, respectfully submits the following Motion to Require the Bureau of Prisons to Allow Him Outdoor Recreation. This brief sets forth applicable background facts and law for the Court to consider and also responds in part to the August 10, 2011 letter to the Court by Warden Catherine Linaweaver of the Metropolitan Detention Center in Chicago ("MCC"). The Court has set this matter for argument at a conference to be held on September 8, 2011.

**BACKGROUND**

Vicente is presumed innocent of any offense yet he is held under conditions that violate due process, the Eighth Amendment ban on cruel and unusual punishment, as well as international human rights and fundamental norms of human decency.

Vicente has been in custody of the Bureau of Prisons since March of 2010, at the Metropolitan Detention Center in Chicago ("MCC"). Although as a pretrial detainee he is presumed innocent and has violated no BOP regulation, he is in the MCC's Special Housing Unit (SHU). The cells are approximately 10 x 6 feet.

1

Vicente is kept isolated in every possible way. He can only talk to guards. Despite committing no offense he is completely denied any and all access to the general population. This deprivation of ordinary human interaction over an unconscionable 18-month period is causing psychological scarring. He has complained to the mental health personnel that he is suffering many symptoms of distress as a result of this lengthy unwarranted punishment. He has expressed his concer that as things go he may be ill and not able to assist in his defense. He shows signs of mental fatigue and it is necessary to repeat things to him many times as if he has trouble understanding what has been previously explained. He is clearly struggling with the mistreatment. It is taking a toll and promises to impair his trial preparation and defense. He desperately wants and needs to be out of the SHU and in the general population with other detainees like him who have committed no violations.

With respect to exercise in particular, he is allowed exercise by some of the lieutenants and not by others. Some allow him daily access to the area; others don't. It seems to be at the whim of the officer of the day. The exercise area is a 12 x 12 feet wire cage. He can walk around the area provided by the cage – small as it is, it is larger than the 10 x 3 feet area he can use to walk in his cell. In the exercise cage there is a broken stationary bike (it offers no resistance) and a pull-up bar. In the entire period of his detention he has not seen sunlight or breathed fresh air. In contrast he had outdoor exercise every day in Mexico's super maximum security facility.

His conditions are punitive. Vicente has complied with all the rules in the institution – not a single write up, yet his detention is far more onerous than that of detainees being punished for violence and infractions of the rules. He is limited to fifteen minutes of phone calls every

other week, even though detainees like him who have committed no offense receive 300 per month. Basic mail access is a serious problem. An outgoing letter takes more than a week and mail, including legal mail, to him has taken as long as two weeks for him to receive. Mail from his family is delayed many weeks or even months. At least twice, legal mail was opened improperly.

He has asked that four persons be allowed visitation with him. The requests for authorization were mailed in last week but have not been acted upon at this writing. Once the visitations are approved he will ask for contact visitation. However, one person has been authorized to visit whom Vicente had not requested – this despite a request that *no* persons not requested by Vicente be permitted to visit him. The institution has been asked not to authorize visitations by persons unknown to Vicente.

As to medical issues, Vicente has chronic gastrointestinal problems. He was told on August 4, 2011 that he would receive some medical care, a visit with a gastroenterologist and a dentist, but it has been postponed for an indefinite amount of time to a later date. No reason for the delay was given.

Food and other commissary items are routinely withheld without apparent reason or explanation. Periodicals are always delivered late. While other inmates in the SHU unit receive the newspaper every day on the day it is delivered to the institution, Vicente receives his, if at all, weeks after publication and delivery to the institution. He is subscribed to The Chicago Tribune and El Paso Daily Times, but almost without exception, none are delivered on a timely basis. Many issues never arrive to his cell.

# ARGUMENT

**The MCC's Refusal to Permit Defendant Any Outdoor Exercise and To Treat Him on an Equal Footing With Other Detainees Who Have Violated No Regulations Constitutes Impermissible Punishment, Flagrantly Violates Defendant's Due Process Rights as a Pretrial Detainee and Would Violate A Convicted Prisoner's Eighth Amendment Rights.**

Defendant's due process rights are being flagrantly violated by the MCC's persistent pattern of punishment even though he has been convicted of no crime and has not violated any BOP regulations. He is singled out for punishment, isolation and disparate treatment, including an abject denial of fundamental access to basic outdoor exercise. As set forth below his treatment would clearly violate even the Eighth Amendment standards applicable to convicted prisoners and are particularly shocking in the case of a pretrial detainee.

**A.    Applicable Standards**

**1.    Due Process and Eighth Amendment Standards of Review**

As a pretrial detainee who has not been convicted of an offense, Vicente's constitutional claim falls under the Due Process Clause which forbids punishment of someone so situated. As the Supreme Court held in *Bell v. Wolfish*, 441 U.S. 520 (1979), "[a] court must decide whether the disability is imposed [on a detainee] for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose." *Id.* at 538. "Absent a showing of an expressed intent to punish…, that determination generally will turn on whether [there is] an alternative purpose to which the restriction may rationally be connected …, and, whether it appears excessive in relation to the alternative purpose …." *Id.* (internal citations and quotations

4

omitted). "Thus, if a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to 'punishment.'" *Id.* "Conversely, if a condition or restriction is not reasonably related to a legitimate goal … a court permissibly may infer that the purpose … is punishment . . . ." *Id.*

The Seventh Circuit has formulated this analysis to require a showing that "(1) the harm to the [detainee] was objectively serious; and (2) the official was deliberately indifferent to [his] health or safety." *Board v. Farnham,* 394 F.3d 469,478 (7th Cir. 2005). The Seventh Circuit applies this test as a matter of convenience to the claims of both pretrial detainees under the Due Process Clause as well as convicted prisoners whose claims fall under the Eighth Amendment. However, it must be emphasized that a pretrial detainee's burden is necessarily lighter as he need only show "punishment" which the Due Process Clause prohibits prior to conviction whereas a convicted prisoner under the Eighth Amendment must show "cruel and unusual punishment." Thus, as the Seventh Circuit notes, "[a]lthough the Eighth Amendment does not apply to pretrial detainees, pretrial detainees are entitled to *at least* as much protection as the constitution provides convicted prisoners." *Id.* at 477-78 (emphasis in original). *See also Hart v. Sheahan,* 396 F.3d 887, 892-93 (7th Cir. 2005)(in most instances Eighth Amendment and Due Process standards "merge" although pretrial detainees have "greater rights" to undefined extent). As a practical matter, as demonstrated below, the circumstances here show a violation under either constitutional provision whether Due Process or Eighth Amendment case law is considered. The fact that Vicente is a pretrial detainee who is presumed innocent and has been convicted of no crime underscores the violation.

### 2. **Isolation and outdoor exercise**

The Seventh Circuit and courts across the nation have long recognized that outdoor exercise is essential to a detainee or prisoner's health and well-being and that unreasonable imposition of isolation is a violation of constitutional rights. As the Seventh Circuit long ago noted, "[l]ack of exercise may certainly rise to a constitutional violation. Where movement is denied and muscles are allowed to atrophy, the health of the individual is threatened and the state's constitutional obligation is compromised." *French v. Owens,* 777 F.2d 1250, 1255 (7th Cir. 1985). Indeed, the Seventh Circuit cited then-Judge Kennedy's decision in *Spain v. Procunier,* 600 F.2d 1979 (9th Cir. 1979) where the Court noted the "substantial agreement among the cases in this area that some form of regular outdoor exercise is extremely important to the psychological and physical well being of the inmates." *Id.* at 199. The Court there upheld the finding of an Eighth Amendment violation where *convicted* prisoners "were in continuous segregation, spending virtually 24 hours every day in their cells with only meager out-of-cell movements and corridor exercise." *Id.* More recently, the Seventh Circuit has reiterated that "[i]n recent years we have not only acknowledged that a lack of exercise can rise to a constitutional violation, …but have concluded that 'exercise is now regarded in many quarters as an indispensable component of preventive medicine.'" *Delaney v. DeTella,* 256 F.3d 679, 683 (7th Cir. 2001)(quoting *Anderson v. Romero,* 72 F.3d 518, 528 (7th Cir. 1995)). "Given current norms, exercise is no longer considered an optional form of recreation, but is instead a necessary requirement for physical and mental well-being." *Id.*

Even in Eighth Amendment cases involving *convicted* felons who were *also* adjudicated guilty of prison violations, the Seventh Circuit has established a guideline that outdoor exercise

6

privileges cannot be denied longer than 90 days. Thus, for example, in *Davenport v. DeRobertis,* 844 F.2d 1310, 1315-16 (7th Cir. 1988) the Court upheld the district court's injunction mandating that prisoners held in segregation longer than 90 days must be given at least five hours of outdoor exercise weekly. In its subsequent decision in *Pearson v. Ramos,* 237 F.3d 881, 884 (7th Cir. 2001), the Court described the "convincing" evidence that "long stretches of such confinement can have serious adverse effects on prisoners' psychological well-being" and that "[w]hen unrelieved by opportunities for out-of-cell exercise, such confinement could reasonably be described as cruel and, by reference to the current norms of American prisons, unusual."

     This Court made significant contributions to this area of the law in *Watts v. Ramos,* 948 F.Supp.739 (N.D. Ill. 1996) where the Court denied plaintiffs summary judgment on qualified immunity and held that plaintiff prisoners had been unconstitutionally denied outdoor exercise. The Court's decision helped establish the benchmark standard that prisoners should have at least five hours of exercise per week. After recognizing the Seventh Circuit's concern that denial of exercise threatens constitutional rights, the Court relied on the recommendations of the American Correctional Association Standards for Adult Correctional Institutions, Std. 3-4258, at 84 (3d ed. 1990) as well as the American Medical Association Standards for Health Services in Prisons, Std. 161, at 31 (1979) that prisoners receive "at least five hours out-of-cell exercise per week." *Id.* at 743. The Court recognized that short-term deprivations or deprivations necessitated by disciplinary violations would not necessarily violate the Constitution. *Id.* at 744. But the Court also concluded that the five-hour standard was also in keeping with precedent outside the Seventh Circuit. *Id.* at 745.

7

**B.** **Application**

Under these standards, there is no question that defendant's due process rights are being flagrantly violated by the Bureau of Prisons at the MCC. Despite not violating any BOP regulations, defendant has been housed in the SHU unit for 18 months and been categorically denied any and all outside exercise since his arrival at the MCC in March, 2010. He has been subjected to the extreme psychological injury exacted by 18 months of isolation from the general population, being only recently permitted to speak to guards. And in numerous respects recounted above – regarding mail, visitation, phone access, medical treatment and other necessities – he is being singled out for unequal and harmful treatment relative to other detainees.

As described above, under the Supreme Court's decision in *Bell v. Wolfish* the question under the Due Process Clause is whether defendant is being punished in purpose or through means that do not justify a valid purpose. The Seventh Circuit formulates the test whether "(1) the harm to the [detainee] was objectively serious; and (2) the official was deliberately indifferent to [his] health or safety." *Board v. Farnham,* 394 F.3d 469,478 (7th Cir. 2005). Taking the second prong first, there is no question that MCC officials are deliberately indifferent to the consequences of Vicente's detention. The parties and the Court have put the MCC repeatedly on notice as to the issues presented here, and little has been done about it.

Nor can there be any question the harm to Vicente is objectively serious. In the *Watts v. Ramos* case concerning deprivation of yard privileges, this Court was among the first to establish the guideline that even convicted prisoners should be entitled to at least five hours of exercise per week. The cases cited above, including Seventh Circuit decisions as well as a Ninth Circuit

8

decision by then-Judge Kennedy all stand for the singular importance of outdoor exercise to the basic health and welfare of the inmates to the point that its unreasonable deprivation constitutes a constitutional violation.

As also described above, even in cases involving *convicted* felons who have *also* committed additional prison violations, the Seventh Circuit recognizes a benchmark that after 90 days of segregation there should be five hours weekly exercise. In this case defendant has been in the MCC for approximately eighteen *months* and has been denied any and all outside exercise and any meaningful indoor exercise as well. This would be a flagrant violation in the case of a convicted felon with multiple prison write-ups. Clearly, then, it is a fundamental violation in the case of a pretrial detainee such as defendant who has not had a single write-up in his entire eighteen-month tenure at the MCC. Indeed, while the Seventh Circuit has commented that the practical distinction is sometimes elusive between Eighth Amendment protections for convicted prisoners and the broader Due Process rights enjoyed by pretrial detainees, if ever there were a case where the broader rights of a presumed-innocent individual were being trampled it is this one.

Nor can it be said that it is sufficient for defendant to exercise in his tight quarters. This disregards the 18-month deprivation of *sunlight* and fails to recognize the singular importance of exercise in fresh air and outdoors. Rejecting a similar argument in the *Watts v. Ramos* case, this Court relied on the Seventh Circuit's decision in *Davenport v. DeRobertis,* 844 F.2d 1310 (7th Cir. 1988)*:*

> Of course, as the defendants argue, an inmate can preserve his cardiovascular fitness and overall muscle tone by running in place or by engaging in other forms of exercise that are feasible without leaving the cell; but this misses the point. The opportunity to exercise or even

9

just to stand around, outside, in the company of other prisoners, is the inmate's principal break from what otherwise is solitary confinement except for his limited opportunities to visit other parts of the prison on specific and tightly supervised missions.

*Davenport,* 844 F.2d at 1314, cited in *Watts v. Ramos,* 948 F.Supp.739, 746 (N.D. Ill. 1996).

Nor can it be heard that the MCC has some administrative or other "reason" for the unconscionable treatment of the defendant here. The Courts that authored the lead decisions in this area have repeatedly rejected such rationales where they did not involve serious violations of prison rules – an argument that is completely unavailable here. In *Spain v. Procunier,* 600 F.2d 189, 200 (9th Cir. 1979), Judge Kennedy rejected this argument forcefully despite the fact that the inmates in question were deemed responsible for a number of deaths in an escape attempt and were considered both risks of violence and targets of retribution. As Judge Kennedy noted, "[t]hese concerns justify not permitting plaintiffs to mingle with the general prison population but do not explain why other exercise arrangements were not made." *See, e.g., Hart v. Sheehan,* 396 F.3d 887, 893 (7th Cir. 2005)(noting that inmates in one tier can exercise while others are locked into their tiers); *Delaney v. DeTella,* 256 F.3d 679, 684 (7th Cir. 2001)(citation of "potential security threat" failed to justify serious deprivations of inmate who had no violations); *Preston v. Thompson,* 589 F.2d 300, 303 (7th Cir. 1978)(prison officials "cannot rely on fiscal and administrative difficulties to frustrate a district court's mandate to remedy constitutional violations").

## **CONCLUSION**

The BOP should be ordered to remove defendant from the SHU and allow him in the general population, remove unfair conditions of detention that exact punishment on him

10

including by allowing him *at least* five hours outdoor exercise weekly, and treat him equally with other similarly situated detainees.

Dated: September 1, 2011

                                      Respectfully submitted,

                                      _____
                                      GEORGE L. SANTANGELO
                                      EDWARD S. PANZER
                                      111 Broadway, Suite 1000
                                      New York, New York 10006
                                      (212) 514-5335
                                      panzer2@rcn.com
                                      glslegal@yahoo.com


                                      ALVIN S. MICHAELSON
                                      Law Offices of Alvin S. Michaelson
                                      1901 Avenue of the Stars, Suite 615
                                      Los Angeles, CA 90067-6018
                                      (310) 300-1101
                                      alvinmlaw@gmail.com

                                      FERNANDO X. GAXIOLA
                                      Law Offices of Fernando X. Gaxiola
                                      3710 South 6th Avenue, Suite 3
                                      Tucson, Arizona 85713
                                      fernando_gaxiola@hotmail.com

                                      Attorneys for Defendant
                                      Vicente Jesus Zambada-Niebla

**CERTIFICATE OF SERVICE**

The undersigned counsel for defendant Vicente Jesus Zambada-Niebla certifies in accordance with Fed. R. Crim P. 49, Fed. R. Civ. P. 5, LR 5.5 and the General Order on Electronic Case Filing (ECF), that on July 29, 2011, the attached DEFENDANT JESUS VICENTE ZAMBADA-NIEBLA'S MOTION TO DISMISS ALL COUNTS AGAINST HIM ON THE GROUND THAT THE GOVERNMENT CONFERRED IMMUNITY ON HIM. was, on July 29, 2011, filed with the Court and served pursuant to the district court's ECF system as to ECF filers:

Thomas D. Shakeshaft
Assistant U.S. Attorney
United States Attorney's Office, N.D. Ill.
219 S. Dearborn Street
Chicago, IL 60604

Counsel for the Government

Gal Pissetzky
Pissetzky & Berliner
53 West Jackson Boulevard
Suite 1403
Chicago, IL 60604
(312) 566-9900
Email: gpissetzky@comcast.net

Counsel for Tomas Arevalo-Renteria

                                          /s/ Edward S. Panzer_____
                                          EDWARD S. PANZER
                                          111 Broadway, Suite 1000
                                          New York, New York 10006
                                          (212) 514-5335
                                          Panzer2@rcn.com

Index No. 09 CR 383-3

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION
=======================================================================
UNITED STATES OF AMERICA,

        Plaintiff,

   -against-

JESUS VICENTE ZAMBADA-NIEBLA,

        Defendant.
======================================================================


                              BRIEF


================================================================
            George L. Santangelo, ESQ.
            Attorney for the Plaintiff
            111 Broadway, Suite 1000
            New York, New York 10006
            212-269-4488
================================================================================
                    Attorney(s) for DEFENDANT
================================================================================
Service of a copy of the within     is hereby admitted.
Dated:
            ......................................
            Attorney(s) for _____
================================================================================
PLEASE TAKE NOTICE
    That the within is a (certified) true copy of a
entered in the office of the clerk of the within
named Court on        2011

    That an Order of which the within is a true copy will be presented for
Settlement to the Hon.        one of the judges of the within named Court,
at                            on                    at

Dated:
                George L. Santangelo, ESQ.
                Attorney for DEFENDANT
                111 BROADWAY
                SUITE 1000
                NEW YORK, NY 10006
TO: