ATTACHMENT C

Document Date:  November 28, 2016

Document from Medical Forensic Doctor Mario Penuelas Castro to Judge Miguel Angel Gamboa-Banda, First District Court State of Sinaloa, Mexico.

The Investigation was based on the Judge's order requesting the Mexican Gov't Medical Forensic Investigation Agency investigate possible torture (in violation of the Istanbul Protocol)  related to our client:  Felipe Cabrera Sarabia.

.



**CRIMINAL INVESTIGATION AGENCY**
**General Coordination of Expert Services**
**Coordinación Estatal de Sinaloa**

**File No: 9229**
**Felony Case Number: 35/2012**
**Subject: Opinion Forwarded**

**Culiacan, Sinaloa, November 28, 2016**

**FIRST DISTRICT JUDGE**

**STATE OF CULIACAN, SINALOA**

**PRESENTE**

The one signed by the Official Medical Expert of this institution, assigned to the State Coordination of Expert Services and proposed by it to intervene in the investigation of the aforementioned item, based on the provisions of articles 272 and 369 of the National Code of Criminal Procedures, as well as articles 22, section I, subsection d) and 25 of the Organic Law of the institution and in response to your request regarding the criminal case cited to the item, I allow myself to send you inside an official, white, closed folder with hologram, the documentation of the Specialized Medical / Psychological Opinion for Cases of Possible Torture and other Cruel, Inhuman or Degrading Treatment or Punishment (based on the Protocol of Est ambul) of C. FELIPE CABRERA SARABIA dated November 28, 2016, which It was in charge of Dr. Mario Peñuelas Castro, Medical Expert and Lic. Miriam Rosalía García Cerecedo, Psychologist Expert.

Documentation for the requesting Authority is attached consisting of:
1.- Opinion in gray,
1.- Opinion in blue,
1 .- informed medical consent
1. Medicine narrative sheet
1 .- Photographic images

I do not omit to state that the Photography Opinion served as the basis for the issuance of this Specialized Opinion.

With the above, we comply with your request.

Con lo anterior, damos por cumplida su petición.

ATENTAMENTE
EL PERITO MEDICO OFICIAL

DR. MARIO PEÑUELAS CASTRO



CRIMINAL INVESTIGATION AGENCY
General Coordination of Expert Services
General Directorate of Forensic Medical Specialties
Department of Forensic Medicine Department of Psychology

RELEASE FOLIO: 303
STATE FOLIO:
9229 MEDICAL PROPOSAL FOLIO:
25135 PSYCHOLOGY PROPOSAL
FOLIO: 25136

FILE: 35 / 2012-11
SUBJECT: A SPECIALIZED PSYCHOLOGICAL OPINION IS ISSUED FOR CASES OF POSSIBLE

TORTURE AND OTHER CRUEL, INHUMAN, OR DEGRADING TREATMENT OR PUNISHMENT.

**Culiacán, Sinaloa, November 28, 2016.**

## Lic. Miguel Ángel Gamboa Banda
## First District Judge in the State of Sinaloa

**PRESENT**

Those who subscribe Professional Experts in the field of Forensic Medicine and psychology, attached to the General Directorate of Forensic Medical Specialties of the General Coordination of Expert Services of this Office, in accordance with the provisions of articles 21 and 102, section 'A' of the CONSTITUC1ON POLITICS OF THE UNITED MEXICAN STATES; 220, 221, 223, 225, 234 and 235 of FEDERAL CODE OF CRIMINAL PROCEDURES; 10 Fractions IV and VI; 22 section I subsection d) and 25 of the ORGANIC LAW OF THE GENERAL ATTORNEY OF THE REPUBLIC; 3 subsections G fraction I, Item H, fraction XXXIX; 12 fraction II; 40 fraction I, III, IX 1 X, XI
and XII; 86 Section I and II of its REGULATIONS; based on agreement A / O85 / 2015
issued by the Attorney General of the Republic and in accordance with the provisions of articles 2, 41 of the REGULATION OF THE ORGANIC LAW OF THE ATTORNEY GENERAL OF THE REPUBLIC; emit the present:

**SPECIALIZED MEDICAL / PSYCHOLOGICAL OPINION FOR CASES OF POSSIBLE TORTURE AND OTHER CRUEL, INHUMAN OR DEGRADING TREATMENT OR PUNISHMENT**
**(Based on the Istanbul Protocol)**

**PROBLEM STATEMENT**

"... carry out the studies and evaluations related to the" Istanbul Protocol "and determine if the defendant Felipe Cabrera Sarabia or Miguel Velázquez Manjarrez (a)" El Inge "," El ingeniero "," El 1 "," El Santa Ana "," El Leo "or" El Señor de la Sierra ", was inflicted pain or suffering, physical or psychological, of those included in article 3 of the Federal Law to Prevent and Punish Torture ..."

**PRESENTATION OF THE EXPERTS AND QUALIFICATION OF THE EXPERTS**
(Istanbul Protocol, chapter III, numeral 2, subsection 'c')

Medical education and clinical training. psychological / psychiatric training. Experience in documenting signs of torture. Experience in the field of Human Rights relevant to the investigation. Training courses on the subject:

**Doctor:**
Full Name: Mario Peñuelas Castro
Position (Badge): Executive Professional Expert "B"
Badge No.: 565517
Title: Surgeon No. of Cedula: 1270068 Cedula
 Specialist: No
Courses and publications on the subject: Experience for more than twenty years as an Expert in Legal Medicine, during which he has performed multiple medical examinations on injured people, attending various courses on human rights and instruction on the proper performance of medical-psychological reports.

Full Name: Miriam Rosalía García Cerecedo

Position (Badge): Executive Professional Expert "B"

Not. of Badge: 565449 Title:

Degree in Psychology ID No.: 5166136

Courses and publications on the subject: With 7 years of forensic experience in expert practice I have several updates, some of them related to the subject such as: RECEIVED: Course "Approved Protocol for the investigation of the crime of torture" taught by the Directorate of Promotion of Culture in Human Rights of the Office of the Attorney General of the Republic August 2016.

Course "criminological psychology"
taught by the National Institute of Criminal Sciences November 2012 Course-Workshop "Update on Psychometric Instruments."
taught by the Department of psychology of the DEED of the DG CSP of the PGR. M May-June 2012.

"Course -Human Rights Workshop on Federal Justice Procurement" given by the Directorate for the Promotion of Culture in Human Rights of the Attorney General's Office

December 2010.
Course "Psychological Effects of Prisionalization" taught by the National Institute of Criminal Sciences, M a y o de 2010.

Interview and interrogation techniques workshop
Taught by the General Directorate with the Anti-Narcotics Affairs section of the Embassy.
from the United States of America.
May 21, 2010.

Course Psychopathology of Depressive Disorder.
Taught by the National Institute of Criminal Sciences. February 2010.

"Course for the application of! Specialized Medical / Psychological Opinion for cases of possible torture and / or mistreatment". given by the Attorney General of the Republic November 2009.
Diploma "Training and initial training for professional experts in the area of forensic psychology". Taught by the National Institute of Pena / es INACIPE Sciences March to September 2009 (570 hours)

TAUGHT:
"Course for the application of the specialized Medical / Psychological Opinion for cases of possible torture and / or mistreatment".
Aimed at public servants attached to the Attorney General's Office of the State of Sinaloa. June 2010.

Conference "emotional impact and psychological consequences on victims of the crime of Human Trafficking" given in the annual circle of conferences of the Inter-Institutional Committee for Attention to Victims of Trafficking in Persons in the State of Sinaloa; addressed to public servants of the 3 levels of government, representatives of Civil Society organizations, as well as professors and students of the Autonomous University of Sinaloa (UAS) and of different Universities of the State of Sinaloa, November 2010.

## INFORME OF THE EXAMINED PERSON
### (Istanbul Protocol, Chapter II, Section 11 C, Number 2.)

Previous explanation of the objective of the application of the Specialized Opinion: Accepting accordingly (YES) (YES) Consent sheet is attached.

### MEDICAL AND Psychological STUDY MATERIAL.

### Doctor:
The ministerial decree, preparatory decree, denouncement of fact, medical reports related to the facts denounced and the physical presence of the accuser to carry out interrogation and physical examination.

### Psychological:

Request for opinion
Criminal Case File 35 / 2012-11 Battery of psychological tests
Interview

## STUDY METHOD.

### Medicine:

It applies: the scientific method. A.- clinical method (interrogation or direct anamnesis} physical examination: inspection, palpation, percussion, and auscultation. B.- Forensic investigation (documentary} deductive method, analytical method, and synthetic method.

C. -establish the cause-effect relationship, (Validation of recent trauma with physical or functional sequelae} D.- Adhering to the international regulations of the Istanbul protocol and those established in the agreement a / 57/2003. E.- with a multidisciplinary approach since it is a test between the forensic specialties of Medicine, Psychology and Photography. F.- on the part of Individual Forensic Psychology, integration of the result, considerations, conclusions and consulted bibliography.

Psychological:
Scientific method
Clinical
Inductive
Analytical
Methodology:
Documentary review
Application of psychological instruments Analysis and integration
of results Considerations
Conclusions
Bibliography

## PSYCHOLOGICAL TECHNIQUES USED

1) To establish if there are signs of organic brain damage that alter their perception, their coordination and / or their behavior, the following were applied:
Guestaltico Visomotor Test by Lauretta Bender
2) To establish your IQ, as well as your various intellectual abilities: Raven's Progressive Matrices Test (General Scale}
3) To describe your Personality structure, your way of thinking, acting and feeling: Test of the Person in the Rain by Emanuel Hammer
Joseph Sacks Incomplete Sentence Test L. C. Morey PAI Personality Assessment Inventory Widows and Smith Structured Symptom Simulation Inventory Beck BAI Anxiety Inventory
CET Tetradimensional Questionnaire? DE, by Alonso-Fernández Harvard Trauma Questionnaire Hopkins Symptom Questionnaire (C-25)
Autobiography
4) Other techniques used:
Deep Psychological Interview (forensic orientation}

## GENERAL INFORMATION ON THE EXAMINED PERSON
### (Annex IV, section II of the Istanbul Protocol)

A) Start time of the legal medical examination, date and physical conditions of the place.

Being the 11: 30: 00 hours, of September 29, 2016, I had in sight in the CEFRESO CENTRO 'FEDERAL DE READAPTACION SOCIAL NUMERO TWO OCCIDENTE, "EL SALTO" a person who said his name was: Felipe Cabrera Sarabia, 45 years old, with the following information:

B) Presentation sheet:

| | |
|---|---|
| Name: | Felipe Cabrera Sarabia |
| Nickname: | It does not refer. |
| Sex: | Male |
| Date of birth: | 1971-08-23 |
| Age: | 45 |
| Civil status: | Single (Free Union) |
| Scholarship: | Primary |
| Occupation: | Rancher |
| Place of Origin: | Durango |
| Nationality: | Mexican |
| Religion: | Catholic |
| Idiom: | Castilian |
| Language: | Maternal |
| Translator or interpreter required | NO |
| Belongs a alguna etnia: | NO |

## INTERPRETATION OF FINDINGS
## LEGAL MEDICAL ANALYSIS

a) Assess the physical signs of injury and abuse that appear in the Investigation File or Folder (medical documents, ministerial proceedings, judicial proceedings,
at disposal, photographic images, diaphragms or anatomical silhouettes, videos, etc)
b) Document injuries and abuses in the absence of concrete accusations from the evaluated person, if applicable.
c) - Correlate the degree of coherence between the symptoms (acute, intermediate, and chronic) and signs found in the medical examination and the specific allegations of abuse made by the evaluated person.
d) .- Point out the physical findings found during the medical examination
legal and naps are related to some of the mechanisms or methods.
specific torture characteristics of those commonly observed and whether.
some consequence.
e) .- Use the information obtained in an appropriate way to publicize
torture better and document it more thoroughly (Establish diagnosis
differential. Interconsultations. Specialized studies. Signaling
injuries, anatomical silhouettes)

Taking into account the type of injuries that Felipe Cabrera Sarabia presented, echymotic and excoriative injuries, were injuries according to his legal medical classification of those that take less than fifteen days to heal and are not life-threatening, blunt injuries that de According to the somatic characteristics if they correspond with the date of their arrest since they have a data close to 24 hours, likewise by their location if they correspond to injuries that lead to acts of torture since they are the only injuries described in the existing medical documents in the file at hand, provided by the court, for such causes of these injuries, however the physical findings found through the physical examination of the alleged torture victim named Felipe Cabrera Sarabia, such as the presence of scar on the tympanic membrane bilaterally if it has correlation with the torture allegation of the examinee since during the narrative he stated that he suffered suffocation with a plastic bag on his head as well as blows with the palms of his hands, leading to a rupture of the tympanic membrane, correlating with the presence of the scars found as findings, in the same way, what was referred to during the direct interrogation manifests course with dizziness and vertigo as well as chronic headaches, this as consequences of the trauma suffered in the ears, causing pressure changes in the auditory canals, as other finding data or Physical sign not documented was the presence of a hypochromic scar in the sacral-coccygeal region of two point five centimeters, this being an allegation of torture by the evaluated since this is not reflected during the medical review, but it is important to point out that if there is a correlation all time that the evaluated person refers to having suffered a blow in this region This causes decreased sensitivity in the lower extremities, predominantly in the distal third and both feet. Which is indicative of a chronic sign of the injuries suffered and referred to during his narrative of events.

## PSYCHOLOGICAL ANALYSIS

       A. - Correlate the observed psychological findings with the reported acts of torture.
       B. Evaluate whether the observed psychological signs are expected or typical reactions to extreme stress considering the basic aspects of the personality and the cultural and social context of the subject.
       C. - Indicate the psychological state of the subject in the fluctuating evolution over time of the symptomatology related to the potentially traumatic event such as torture.
       D. - Identify all coexisting stressors that act on the subject and the impact that these factors may have on the subject.

**Psychology**.

After having analyzed the history of the arrest of Mr. Felipe Cabrera Sarabia, the conditions before and after the torture, the cognitive, behavioral, and emotional aspects, the verbal and non-verbal aspects observed during the interview, it is determined that:

A. If there is a correlation between the observed psychological findings and the reported acts of torture, adding that during the evaluation there were moments in which physiological reactions could be observed while the evaluated described in detail the treatments to which he was subjected at the time of his detention.

B. - Not all the symptoms referred to by Mr. Felipe Cabrera Sarabia have been corroborated, but the signs manifested during the development of this evaluation have been confirmed, these being the typical ones to be expected in people who have experienced situations of torture and ill-treatment.

C. The psychological state of Mr. Felipe Cabrera Sarabia is altered in his three psychic spheres derived from the torture event that he denounces, a situation that has been exacerbated by the confinement situation in which he currently finds himself.

D. - The coexisting stressor that acts on the subject is mainly the presence of uniformed personnel, particularly if it involves elements of! Mexican National Army since these were the ones who apprehended him, and they are the ones he points to as responsible for having committed torture to the detriment of his person.

## TECHNICAL CONSIDERATIONS
### (Theoretical framework)

**Medical and Psychological Medicine.**

Clinical propedeutics is the ordered set of methods and procedures that the doctor uses to obtain the symptoms and signs, to integrate the diagnosis. Legal medicine relies on clinical propedeutics to integrate or establish a medical-legal diagnosis of a clinical type; likewise, on occasions and at the doctor's discretion, it can be supported by complementary studies such as laboratory or office tests for the integration of the diagnosis. The forensic medical dictate has the purpose of determining whether the examined person presents injuries. The Federal Penal Code, in its article 288 mentions that "under the name of injury,

It includes not only wounds, scratches, contusions, fractures, discolorations, burns, but also any alteration to health and any other damage that leaves a material mark on the human body if these effects are produced by an external cause". The federal law to prevent and punish torture establishes in article 3 that "the crime of torture is committed by a public servant who, due to his or her powers, inflicts severe pain or suffering on a person, be it physical or mental in order to obtain , of the tortured or of a third party, information or a confection, or cost it for an act that has been committed or is suspected of having been committed, coercing it to carry out or stop doing a certain conduct. "Ecchymosis: It is a subcutaneous lesion characterized by deposits of extravasated blood between the tissues, under the skin, after the rupture of one or more capillary blood vessels due to contusion or compression of the region. From the medico-legal

point of view, it is classified as a simple contusion and is an unequivocal sign of vitality. Its size and shape may vary, which will depend on the type, size and shape of the causative agent, as well as the intensity and force with which it was produced. of free blood in the subcutaneous tissues, initially it can preserve the size and shape of the producing agent, but later it can increase its size depending on the anatomical region, especially if it is found in declining parts. After the local trauma, a red-blackish coloration appears due to the fact, that the blood contains hemoglobin, after its degradation it becomes hemosiderin, which is blue in color, later the hemosiderin turns into hematoidin, which has a greenish coloration., and finally due to its degradation, it becomes hematin, which is yellow in color. Therefore, ecchymosis tends to change color according to its chronology, being red when it is a recent injury, that is, from the first minutes to twenty-four hours, black or violet from the second to the third day, blue from the fourth on the sixth day, green from the seventh to the twelfth day, and yellow from trace to twenty-one days, until disappearing. Excoriation: Lesion characterized by the traumatic loss of the superficial layers of the skin, especially the corneal layer and the epidermis, exposing the dermis. Saber the lesion appears immediately, according to its depth, a small serous, hematic, or mixed effusion, which when drying forms what is known as a scab. The size and shape of the excoriation will depend on the instrument or mode of production. When the scab is detached and the lesion heals, it does not leave a scar, unlike when the lesion concerns the dermis or the basal layer, as the scab detaches and heals if it leaves a scar on the skin. The medical-legal importance of the excoriation lies in the fact that it indicates the direction of the applied force, it can show the pattern of the object causing the injury, it can contain signs (hairs, fibers, sand), useful to identify the agent and by its nature indicate the site where it was infringed.

**Psychology.**

a) According to the Istanbul Protocol, the term "torture" shall be understood as: "any act by which a person is intentionally inflicted severe pain or suffering, whether physical or mental, in order to obtain from him or her a third party information or a confession, to punish it for an act that it has committed, or is suspected of having committed, or to intimidate or coerce that person or others, or for any reason based on any type of discrimination, when said pain or suffering are inflicted by a public official or by another person in the exercise of public functions, at his instigation, or with his consent or acquiescence. Pain or suffering that is solely the consequence of legitimate sanctions, or that is inherent or incidental, is not considered torture. these.". (sic)

a) Pursuant to Article 3 of the Federal Law to Prevent and Punish Torture, "The crime of torture is committed by a public servant who, due to his or her duties, inflicts serious pain or suffering on a person, whether physical or psychological, for the to obtain information or a confession from the tortured person or from a third party, or to punish them for an act they have committed or are suspected of having or to coerce them to carry out or stop carrying out a certain conduct. (Paragraph amended DOF 07-02-1992). Annoyances or penalties that are solely the consequence of legal sanctions, that are inherent or incidental to them, or derived from a legitimate act of authority will not be considered torture. "

b) In the Istanbul Protocol it is cited that the role of psychological evaluation "The idea that torture constitutes an extraordinary life experience, which can give rise to a wide variety of physical and psychological suffering, is very generalized. Most of the clinicians and researchers agree that the extreme character of the torture experience is powerful enough by itself to generate mental and emotional consequences, whatever the previous psychological state of the subject ... there are associations of symptoms and psychological reactions that they have been observed and documented, quite regularly, in torture survivors. " .

c) Frequently the symptoms that are tried to be found in these evaluations are in part like those of Major Depression also described in the Protocol.

d) The diagnosis most frequently associated with the psychological consequences of torture is Post-Traumatic Stress Disorder (PTSD).
The definition given by the Diagnostic and Statistical Manual of Mental Disorders (DSM-IV) of PTSD is based mainly on the presence of memory disorders related to trauma, such as, for example, intrusive memories, nightmares, and inability to remember important aspects of your experience. However, the main themes of the story will remain consistent in the different interviews.

According to DSM-IV, PTSD can be acute, chronic, or delayed, and symptoms can last for more than a month. The disorder can cause considerable distress or impairment in the subject's functioning. To diagnose PTSD, the subject must have been exposed to a traumatic event that has included life-threatening experiences in his or her life or the lives of others and caused intense fear, hopelessness, or horror. The event must be persistently re-experienced in one or more ways.

e) The subject will persistently demonstrate that he avoids all stimuli associated with the traumatic event or will show a general damping of reactivity, which is indicated by the meeting of a minimum of three of the signs manifested in the PTSD, according to the DSM classification -IV
f) Last but not least, it must be considered that the incarceration situation and the conditions that are characteristic of the deprivation of liberty provoke a series of psychological chain reactions generated by permanent emotional tension. Prisionalization is a phenomenon that has developed worldwide, because of the imposition of relatively long custodial sentences. The prison, as an institution, as a closed environment, requires from the people who suffer it a constant adaptive effort to confinement that, undoubtedly, creates as consequence a series of affective, emotional, cognitive, and perceptual distortions that are glimpsed from the moment of the arrest since the accused is stripped even of the external symbols of his own autonomy (clothing, personal belongings, among others).

The psychological reactions frequently present in case: s of people. who have suffered torture are widely described in the Manual known as the Istanbul Protocol, in this regard Mr. Felipe Cabrera Sarabia shows associated symptoms which can be seen graphically in tables 1 to 4 called "MOST FREQUENT PSYCHOLOGICAL REACTIONS", DEPRESSIVE DISORDERS"? POST-STRESS DISORDERS" AND 'PTSD, CRITERIA OF DSM-IV", respectively, located in the"Psychology "section of section" XVIII "called" ANNEXES "of this document. '

## CONCLUSIONES

Medicine: Once the documentaries provided by the Court have been evaluated, such as: the detaining part of the accused, the existing medical documents, as well as the clinical file provided by CEFRESO NUMERO 1, and CEFERESO NUMERO 11, it can be considered that the clinical picture initially presented at the time of his arrest of the case that concerns us today, as well as the chronic signs that persist in the evaluated, therefore, according to the analysis of the initial medical documents and the medical examination performed on Felipe Cabrera Sarabia, it is possible to establish that if I present findings compatible with **Physical Torture**, since there is a correlation with the clinical findings and what was narrated by the alleged victim:

**FIRST:** The lesions presented by C. FELIPE CABRERA SARABIA, are those that take more than fifteen days to heal and do not endanger life, and considering their morphological characteristics, number of them and anatomical location, according to this physical evidence is related to your allegation of physical torture.

**SECOND:** Due to the type of injuries that C. FELIPE CABRERA SARABIA presented, and that correspond to ecchymoses, wounds, located in the auditory canals, as well as injuries in the sacrococcygeal region as well as the multiple ecchymoses located in the right frontal region At the supraciliary level, reddish ecchymosis measuring six by six centimeters in dimension, located on the right shoulder and pain in both thighs as a whole have a mechanism of production by contusion, with blunt objects such as hands, feet, which is congruent with their allegations of torture and whether it corresponds to the acute and chronic findings.

**THIRD:** At the time of the legal medical examination of C. FELIPE CABRERA SARABIA, carried out by the undersigned, if findings and consequences of excessive use of force were found.

**FOURTH:** Therefore, C. FELIPE CABRERA SARABIA DOES present evidence of physical torture.

**PSICOLOGIA:**

**UNIQUE:** According to the application of the technique suggested by the Istanbul Protocol: Manual for the investigation and effective documentation of torture and other cruel, inhuman or degrading treatment or punishment, and as a result of the psychological evaluation carried out on Mr. Felipe Cabrera Sarabia , if it presents psychological damage and shows symptoms of that commonly found in people who have suffered torture consistent with the suffering referred to by the Federal Law to Prevent and Punish Torture.

**Recommendations**

It is suggested that Mr. Felipe Cabrera Sarabia go to individual psychotherapy to overcome the psychological findings present in him, without being able to specify the number of sessions because the recovery depends on the characteristics of each individual.

# STATEMENT OF TRUTH OF THE MEDICAL AND PSYCHOLOGICAL EXPERT ABOUT THEIR PARTICIPATION IN THE PRESENT CASE

Those, who subscribe to Official Experts of this Institution, have had knowledge of the background of the case through the documentaries sent by the requesting authority, carried out the necessary medical and psychological interviews in which the narration of FELIPE CABRERA SARABIA was obtained, in relation to to the facts referred to as torture, as well as other elements of a medical-psychological nature, of which the analysis, interpretation, correlation and conclusions supported by our specialized knowledge and corresponding scientific bibliography are carried out, in order to issue this opinion in a reliable way, always attached to the values of conduct of the public service.

.

**ADD MEDICAL AND PSYCHOLOGICAL ANNEXES**

Medicine.
1. Certified documentaries provided by the requesting court.
2. Informed consent.
3. Narrative of facts.
4. Opinion of Photography. Psychology.
Graphic representation of the symptoms presented by Mr. Felipe Cabrera Sarabia, at the time of being evaluated.
Table 1
**MOST FREQUENT PSYCHOLOGICAL REACTIONS (Protocol of**

**Istanbul, Chapter VI, section B, number 2)**

**TYPE OF PSYCHOLOGICAL REACTION, ITS MOST COMMON MANIFESTATION AND WHAT IS OBSERVED AND / OR MANIFESTED BY THE ASSESSED FELIPE CABRERA SARABIA**

a) Re-experience of the trauma: The victim may have sudden flashbacks or intrusive memories in which they live the traumatic event repeatedly, and this even when the person is awake and conscious, or they may suffer recurring nightmares that include elements of the traumatic event in its original form or in symbolic form. Suffering from exposure to elements that symbolize, or mimic trauma is often manifested by a lack of trust and fear of people in authority, including physicians and psychologists.

The evaluated **DOES** present this condition.
a) Avoidance and emotional blunting;
i) Avoidance of any type of thought, conversation, activity, place or person that arouses memories of the trauma;
ii) Deep emotional withdrawal;
iii) Deep personal disaffection and social withdrawal;
iv) Inability to remember some important aspect of the trauma.

The evaluated only presents criteria "i)" and "ii)" of this condition.
b) Hyperexcitation:
i) Difficulty falling asleep or staying asleep;
ii) irritability or outbreaks of cholera;
iii) Difficulty concentrating;
iv) Hypervigilance exaggerated restless reactions.
v) Generalized anxiety.

vi) Shallow breathing, sweating, dry mouth, dizziness, and gastrointestinal problems.

**YES,** the evaluated presents this condition except for subsections "iii)" "iv)", "v)" and "vi)"

d. Symptoms of depression the following symptoms of depression may be observed: mood: depressive, anhedonia (marked reduction of interest or pleasure in any activity), appetite disorders, weight loss, insomnia or hypersomnia, psychomotor agitation or retardation, fatigue, and loss of energy, feeling of worthlessness, excessive feeling of guilt, difficulty paying attention, concentrating, or remembering an event, thoughts of death, thoughts or suicide attempts.

**YES,** the evaluated presents this condition.

e) Decreased self-esteem and hopelessness regarding the future: The victim has the sensation of having suffered irreparable damage and an irreversible change in his personality ... he thinks that he has lost a part of his future and finds himself without expectations of going.

The evaluated does **NOT** present this condition.

f) Dissociation, depersonalization, and atypical behavior: The 'dissociation is a break in the integration of consciousness, self-perception, memory and actions. The person may be cut off or may feel split in two as if observing himself from a distance. Depersonalization is feeling detached from yourself or your own body. Impulse control problems give rise to behaviors that the survivor considers to be very atypical with respect to her pre-trauma personality. '

The evaluated does **NOT** present this condition.

g) Psychosomatic complaints: Among the victims of torture, psychosomatic symptoms such as pain, headaches or other physical symptoms are common, with or without objective signs. The only complaint that manifests itself may be pain, which may vary both in its location and in its intensity. Psychosomatic symptoms can be directly due to the physical consequences of torture or have a psychological origin. Typical psychosomatic complaints include back pain, musculoskeletal pain, and headaches. Headaches are quite common among torture survivors and often lead to post-traumatic chronic headaches.

**YES,** the evaluated presents this condition.

h) Sexual dysfunctions: Sexual dysfunctions are common among torture survivors, particularly (though not exclusively) among those who have suffered sexual or sexual torture or violations.

The evaluated does **NOT** present this condition.

i) linguistics can be confused with psychotic symptoms. Before diagnosing someone as psychotic, it will be necessary to evaluate her symptoms within the subject's own cultural context. Psychotic reactions can be brief or prolonged, and symptoms can appear while the person is detained and tortured or afterwards. Some of the following symptoms may be found:

i) Delusions.

ii) Auditory, visual, tactile and / or olfactory hallucinations.

iii) outlandish ideas and behavior.

iv) perceptual illusions or distortions that can take the form of borderline or frankly psychotic states. False perceptions and hallucinations that occur when falling asleep or waking up are common in the general population and do not indicate the existence of a psychosis. It is not uncommon for torture victims to report that they sometimes hear screams, that they are called by name, or that they see shadows, but without showing signs or symptoms of fully developed psychosis.

v) Paronoia and delusions of persecution.

vii) Subjects who have a history of mental illness may suffer a recurrence of their psychotic disorder or character disorders with psychotic characteristics.

The evaluated does **NOT** present this condition.

e) Substance abuse: Survivors of torture often begin to abuse alcohol and drugs as a way of obstructing their traumatic memories, regulating their emotions, and controlling their anxiety.

The evaluated doe**s NOT** present this condition.

k) Neuropsychological impairment: Torture can cause physical trauma that results in varying degrees of brain impairment. Head blows, suffocation, and prolonged malnutrition can have long-term neurological and neuropsieological consequences that are not easy to detect during a medical examination. Both functional and organic disorders can cause fluctuations or deficiencies in the level of consciousness, orientation, concentration, memory, and executive functioning.

The evaluated does **NOT** present this condition.

**Table 2**
**DEPRESSIVE DISORDERS**
**(Istanbul Protocol, Chapter VI, section B, numeral 3 subsection "b")**
**TYPE OF PSYCHOLOGICAL REACTION AND WHAT IS OBSERVED**
**AND / OR MANIFESTED BY THE ASSESSED FELIPE CABRERA SARABIA**

1) depressed mood
**YES,** the evaluated presents this condition.

2) Interests or pleasure clearly diminished in all or almost all Activities
**YES,** the person evaluated DOES present this condition.

3) Weight loss or change in appetite.
 The evaluated person does **NOT** present this condition.

4) Insomnia or hypersomnia
**YES,** the evaluated presents this condition.

5) Agitation or psychomotor retardation
The evaluated does **NOT** present this condition.

6) Fatigue or loss of energy
**YES,** the evaluated presents this condition.

7) Feeling of worthlessness or excessive or inappropriate guilt
The evaluated person does **NOT** present this condition.

8) Reduction of the ability to think or concentrate
**YES,** the evaluated person presents this condition.

9) Recurring ideas of death or suicide
The evaluated **does NOT** present this condition.

**Table 3**
**POST-TRAUMATIC STRESS DISORDER**
**(Istanbul Protocol, Chapter VI, section B, numeral 3 subsection ")**

## TYPE OF REACTION PSYOLOGY AND WHAT IS OBSERVED AND / OR MANIFESTED BY THE ASSESSED FELIPE CABRERA SARABIA

1- Distressing intrusive memories of the event. The evaluated DOES present this condition.

2. - Recurrent distressing dreams of the event., The evaluated person DOES present this condition

3. - Acting or feeling that the event is happening again (including hallucinations, flashbacks, and illusions). The evaluated DOES present this condition.

4. - Intense psychological anguish in the face of exposure to memories of the event. The evaluated person DOES present this condition.

5. - Physiological reactivity when exposed to similar signs or aspects that symbolize the event. YES, the evaluated presents this condition.

**Table 4 TEP, DSM-IV CRITERIA**
**(Istanbul Protocol, Chapter VI, section B, numeral 3 subsection "b")**
**TYPE OF PSYCHOLOGICAL REACTION AND WHAT IS OBSERVED OR MANIFESTED BY THE ASSESSED FELIPE CABRERA**

1) Efforts to avoid thoughts, feelings, or conversations associated with the trauma.
 **YES,** the evaluated presents this condition.

2) Efforts to avoid activities, places or people that remind the victim of the trauma.
**YES,** the evaluated presents this condition.

3) Inability to remember some important aspects of the event. The evaluated does **NOT** present this condition.

4) Decrease in interest in important activities. **YES,** the evaluated person does present this condition.

5) Detachment or distancing from others. **YES,** the evaluated **DOES** present this condition.

6) repressed affective state
**YES**, the evaluated presents this condition.

7) Narrowing of the sense of the future. The evaluated person does **NOT** present this condition.

## BIBLIOGRAPHIC REVIEW

**Doctor**
C. Baltazard. Manual of Legal Medicine. Barcelona Salvat.
C. Simonin. Judicial Legal Medicine. Barcelona. Jims.

Keit Simpson: Forensic Medicine. Barcelona. Espaxs.
Garcia Garduza, Ismael. Medical-Forensic Expert Procedure. Mexico. Porrua.
Federal penal code.
Federal Law to prevent and punish torture.
Agreement 085/2015 PGR Psychologist

**Psychology:**
- Istanbul Protocol, Manual for the effective investigation and documentation of torture and ill-treatment or cruel, inhuman, or degrading punishment, United Nations, New York and Geneva, 2004.

- American Psychiatric Association. DSM-IV-RT, Diagnostic and Statistical Manual of Mental Disorders. Ed. Masson. Spain, 2001.
- The psychological evaluation of allegations of torture, International
- Rehabilitation Council for Torture Victims (IRCT) 2009

- Prisionalization, its psychological effects and its evaluation. Journal of the Faculty of Psychology Universidad Cooperativa de Colombia - Volume 6, Number 11 / July-December 2010
- The manuals of each and every one of the tests that make up the battery of tests used for the preparation of this opinion.

### SIGNATURE OF THE EXPERTS
### SINCERELY

Dr. Mario Peñuelas Castro
Médico Forense

Psic. Miriam Rosalía García Cerecedo
Psicóloga



**PODER JUDICIAL DE LA FEDERACIÓN**